

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHANTELLE LEIGH MARTINEZ,<br>PLAINTIFF, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-542-A |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Shantelle Leigh Martinez ("Martinez") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Martinez protectively applied for DIB and SSI on July 31, 2008, alleging that her disability began on August 1, 2008. (Transcript ("Tr.") 16, 210–16.) In her brief, Martinez "recognizes that her date last insured of June 30, 2007, was prior to her amended disability onset date of August 1, 2008, and prohibits a finding of a period of disability and an

award of disability insurance benefits." (Plaintiff's Brief ("Pl.'s Br.") at 2 n.1.)  Thus, the Court will only consider whether Martinez is entitled to SSI.

After her application for benefits was denied initially and on reconsideration, Martinez requested a hearing before an administrative law judge ("ALJ"). (Tr. 16, 106–13, 117–25, 128.) The ALJ held a hearing on November 19, 2009 and a supplemental hearing on June 2, 2010, and he issued an unfavorable decision on November 24, 2010. (Tr. 16–25, 31–101.) On April 24, 2012, the Appeals Council denied Martinez's request for review, leaving the ALJ's decision as the final decision of the Commissioner in her case. (Tr. 6-9; see Tr. 1–2.) Martinez subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 et seq., of the SSA and numerous regulatory provisions. See 20 C.F.R. Pt. 416 (2012). The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); see McQueen v. Apfel, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. Id. § 416.920(b). "Substantial gainful activity" is defined as work activity "that involves doing significant physical or mental activities . . . for pay or profit." Id. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. Id. § 416.920(c); see also Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985), cited in Loza v. Apfel, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an

2

impairment contained in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. § 416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work.  *Id.* § 416.920(f).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.  *Id.* § 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).  At steps one through four, the burden of proof rests upon the claimant to show that he is disabled.  *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla, but less than a preponderance.  *Id.*  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Id.*  This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUES

In her brief, Martinez presents the following issues:

1.   Whether the ALJ followed the proper legal standard when he rejected the opinion of Martinez's treating physician; and

2.   Whether the ALJ's mental and physical residual functional capacity ("RFC") assessments are supported by substantial evidence.

(Pl.'s Br. 4, 6.)

### IV.   ALJ DECISION

In his November 24, 2010 decision, the ALJ first found that Martinez had not engaged in any substantial gainful activity since August 1, 2008, the alleged onset date of disability, through the date of the decision. (Tr. 18.) At the second step, the ALJ found that Martinez suffered from the severe impairments of post-traumatic stress disorder ("PTSD"), personality disorder, lower back pain, migraine headaches, bilateral carpal tunnel syndrome ("carpal tunnel"), and morbid obesity. (*Id.*) At the third step, the ALJ found that Martinez did not suffer from an impairment or combination of impairments that met or equaled one listed in the Listing. (Tr. 19.) The ALJ then determined that Martinez had the mental RFC ("MRFC") for:

> [U]nderstanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting.[1]

(Tr. 20.) Pursuant to Social Security Ruling ("SSR") 96-9p, the ALJ limited Martinez to jobs involving unskilled work. As to her physical RFC ("PRFC"), the ALJ determined that Martinez

---

[1] Because Social Security Ruling ("SSR") 96-9p states these are the requirements for remunerative unskilled work, the ALJ instructed the vocational expert to limit the jobs he proposed to unskilled work. (Tr. 20.)

4

could perform sedentary work.[2]  (*Id.*)  Relying on these RFC assessments, the ALJ opined that Martinez was unable to perform any past relevant work.  (Tr. 24.)  However, at the fifth step, the ALJ found, based on the vocational expert's testimony, that there were jobs that existed in significant numbers in the national economy that Martinez could perform.   (Tr. 24–25.) Consequently, the ALJ found Martinez was not disabled.  (Tr. 25.)

## V.    DISCUSSION

### A.    Treating Physician Opinion

Martinez argues that the ALJ improperly rejected the opinion of her treating physician at Dallas Metrocare Services ("Metrocare") without considering the factors set forth in 20 C.F.R. § 416.927(c).  (Pl.'s Br. at 4.)  In a Medical Assessment of Ability to Do Work Related Activities ("Mental Assessment") dated October 20, 2009, the Metrocare treating physician[3] concluded that Martinez "was unable to cope with normal work stress (even those inherent in low stress jobs) without exacerbating pathological based symptoms, in a regular, competitive employment and in a sheltered work setting."  (Tr. 22; *see also* Tr. 655–57.)  The Metrocare treating physician further opined, *inter alia*, that Martinez had a substantial loss of ability to: (1) demonstrate reliability by maintaining regular attendance and being punctual within customary tolerances; (2) maintain concentration, attention, and stay on task for an extended period; (3) perform at a

---

[2] Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

[3] The Court notes that it is unable to read the name or signature of the doctor that signed the Mental Assessment.  (Tr. 657.)

consistent pace without an unreasonable number and length of rest periods or breaks; (4) accept instructions and respond appropriately to criticism from supervisors; (5) respond appropriately to changes in a routine work setting; and (5) finish a normal work week without interruption from psychologically based symptoms.[4] (Tr. 655-56.) The Metrocare treating physician also assigned Martinez a Global Assessment of Functioning Score ("GAF")[5] of 43, indicating that she had "serious impairment in social, occupational, or school functioning." (DSM-IV at 32; *see* Tr. 22.) Martinez argues that if the ALJ had properly considered the Metrocare treating physician's opinion, specifically the Mental Assessment, the ALJ would have found a "much more detailed and limited" MRFC. (Pl.'s Br. at 6; *see also* Tr. 655–57.)

In this case, as noted above, the ALJ determined that Martinez had the PRFC to perform sedentary work subject to certain mental limitations. (Tr. 20.) As to the mental limitations, the ALJ found that Martinez had the MRFC "for understanding, remembering, and carrying out simple instructions." (*Id.*) The ALJ also determined that Martinez could make judgments commensurate with the functions of unskilled work, respond appropriately to supervision, coworkers, and usual work situations, and deal with changes in a routine work setting. (*Id.*) In reaching the MRFC determination, the ALJ reviewed the medical evidence of record, including the following: (1) testimony from Craig Moore, Ph.D.[6] ("Dr. Moore"), at the June 2, 2010

---

[4] The Court notes that the ALJ incorrectly stated that the Metrocare treating physician found that Martinez had an extreme loss of "the ability to sustain concentration and persistence; accept instructions and respond appropriately to criticism from supervisors; respond to changes in a routine setting; and finish a normal work week without interruption from psychologically based symptoms." (Tr. 22.) However, any error resulting from the ALJ's statement that Martinez's condition was worse than what was actually found by the Metrocare treating physician is harmless.

[5] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (DSM-IV).

[6] Dr. Moore is a medical expert, specifically a psychologist, who has practiced medicine since 1977. (Tr. 209.)

6

hearing before the ALJ that, with medication and sobriety, Martinez's mental impairments would cause: (a) no more than moderate restrictions in activities of daily living, (b) moderate difficulties in social functioning, and (c) moderate difficulties in concentration, persistence, or pace (Tr. 19; *see also* Tr. 80–82); (2) a June 19, 2009 emergency room visit in which Martinez received a GAF score of 60[7] (Tr. 22, 702–03); and (3) various medical records showing that medications helped alleviate Martinez's symptoms but that she had not been very compliant in regularly taking her medications. (Tr. 21–23; *see, e.g.*, Tr. 378, 458, 482, 703.)

The regulations, rulings, and relevant case law reflect that the ALJ should weigh all of the medical source opinions and articulate the reasons underlying the decisions he has made. *See generally* 20 C.F.R. § 416.927(b), (d); *see also* SSR 96-6p; 1996 WL 374180, at *2 (S.S.A. July 2, 1996). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. § 416.927(b), (d)(1). Controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse*, 925 F.2d at 790. Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special

---

[7] A GAF score between, and including, numbers 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV at 34.

significance. *See* 20 C.F.R. § 416.927(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § [416.927]." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the statutory analysis of 20 C.F.R. § 416.927, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 416.927(c); Social Security Ruling ("SSR") 96-6p, 1996 WL 364180, at *3 (S.S.A., July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).[8]

Assuming, without deciding, that the ALJ was required to go through the factors set forth in 20 C.F.R. § 416.927(c) before rejecting the Metrocare treating physician's Mental Assessment, the Court concludes that the ALJ did properly evaluate such Mental Assessment. As to factors one and two under which the ALJ evaluates the examining and treatment relationship between Martinez and the Metrocare treating physician, the ALJ reviewed Martinez's treatment history with Metrocare and the various times Martinez was examined by

---

[8] Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 416.927(c) only if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.").

someone affiliated with Metrocare. (*See generally* Tr. 452–601; Tr. 641–653; Tr. 655–57.) To begin with, it is clear that the ALJ was aware of his obligations relating to analyzing the opinions of a treating physician as he specifically stated that he "considered opinion evidence in accordance with the requirements of . . . 20 C.F.R. § 416.927."[9] (Tr. 20.) In addition, it is evident that the ALJ considered the Metrocare physician to be Martinez's treating physician because the ALJ, after previously citing to 20 C.F.R. § 416.927, expressly stated that "the claimant's treating physician" completed the Mental Assessment.[10] (Tr. 20, 22.)

As to factors three, four, and six under which the ALJ evaluates the supportability and consistency of physician's opinion as well as any other factors that "tend to support or contradict the opinion" (*see* 20 C.F.R. § 416.927(c)(3), (4), (6)), the ALJ noted the inconsistencies between the Metrocare treating physician's conclusions in the Mental Assessment and other medical evidence in the record. Such evidence included the testimony of Dr. Moore that, with medication and sobriety, Martinez's mental impairments would only cause her moderate difficulties and various medical records showing medications helped alleviate Martinez's symptoms. (Tr. 19, 21–23.) A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling. *See* 20 C.F.R. § 416.930(a), (b); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). Because the ALJ properly considered the treatment records and opinions of the Metrocare treating physician, and went through the factors listed in

---

[9] This is the relevant regulation concerning how to evaluate opinion evidence, including a treating physician's opinion. *See* 20 C.F.R. § 416.927.

[10] The Mental Assessment was conducted at Metrocare facilities and was completed by a Metrocare physician. (Tr. 655–57.)

20 C.F.R. § 416.927(c) before rejecting the Metrocare treating physician's Mental Assessment, the Court concludes that the ALJ did not err.[11] Thus, remand is not required.

### B.   RFC Determination

In her brief, Martinez argues that the ALJ erred because neither the MRFC determination nor the PRFC determination is supported by substantial evidence. RFC is what an individual can still do despite her limitations.[12] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both extertional and nonexertional[13] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at *3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

---

[11] As to factor five, more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 416.927(c)(5). *See also Newton*, 209 F.3d at 455. Factor five does not apply here because neither the record, nor either party's brief indicates the Metrocare treating physician is a specialist of any sort. Thus, his opinion is entitled to no additional weight under this factor.

[12] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[13] Exertional capacity addresses an individual's ability to "perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5.   The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. § 416.929; SSR 96-7p, WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children).   The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").

### 1.    MRFC Determination

The first issue as to the RFC determination is whether the ALJ's MRFC determination[14] is supported by substantial evidence.  With respect to this issue, Martinez's primary argument is that the ALJ failed to give sufficient weight to her Metrocare treating physician's opinion in the Mental Assessment, which suggested a more severely limited RFC than the ALJ's ultimate MRFC determination.  (Pl.'s Br. at 7.)  This argument, however, fails because, as discussed

---

[14] The ALJ found Martinez has the MRFC "for understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Tr. 20.

11

above, the ALJ adequately considered the Metrocare treating physician's opinion and, thereafter, properly rejected his opinion. *See* Part V.A., *supra*. In addition, Martinez directs the Court to evidence that she claims contradicts the ALJ's MRFC determination.[15] However, an ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citations omitted).

In this case, it is clear that the ALJ discussed the evidence in the record in making his MRFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his MRFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Because there is substantial evidence in the record that supports the ALJ's MRFC determination, the Court concludes that remand is not required.

## 2. PRFC Determination

The next issue is whether the ALJ's PRFC determination is supported by substantial evidence. With respect to this issue, Martinez argues that the ALJ improperly failed to limit her PRFC to reflect the effect her carpal tunnel had on her ability to perform work. (Pl.'s Br. at 9.) Martinez argues, in essence, that it was inconsistent for the ALJ to find that her bilateral carpel

---

[15] Martinez claims the following evidence supports a more limited MRFC determination: (1) she suffered from PTSD, a severe impairment (Tr. 16); (2) she was forcefully gang-raped when she was fifteen, which resulted in her becoming pregnant (Tr. 63); (3) she experiences flashbacks from the gang-rape incident as well as two other traumatic incidents involving her husband (Tr. 62–64); (4) she voluntarily admitted herself to Columbia Green Oaks in October 2005 after superficially cutting her wrists (Tr. 323); (5) she had been diagnosed with major severe and recurrent depressive disorder and a mood disorder and received intermittent treatment at Parkland Hospital and Dallas Metrocare (Tr. 418, 421, 534–38, 462); (6) her child was taken away by Child Protective Services, her husband was incarcerated, and Martinez did not have a place to live (Tr. 534–38); and (7) statements that she was hearing loud voices, was going insane, and wanted to overdose (Tr. 473). (Pl.'s Br. at 7-8.)

tunnel syndrome was a severe impairment at Step Two[16] and then fail to include any limitations in Plaintiff's PRFC "to reflect the effects that Plaintiff's carpal tunnel has on her ability to perform work." (Pl.'s Br. at 9.)  Martinez points to Social Security Ruling ("SSR") 96-9p in support, which states:

> Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity.  Fine movements of small objects require use of the fingers; e.g., to pick or pinch.  Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.
>
> Any *significant* manipulation limitation of an individuals' ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base. . . .  When the limitation is less significant, especially if the limitation is in the non-dominant hand, it may be useful to consult a vocational resource.

SSR 96-9p, 1996 WL 374185, at *8 (S.S.A. July 2, 1996).   In addition, Martinez claims that "the ALJ failed to pose to the vocational expert a hypothetical in which Plaintiff's manipulative abilities were effected [sic], resulting in prejudice to Plaintiff at step five of the sequential evaluation process, requiring remand of this case for further administrative proceedings." (Pl.'s Br. at 10.) Martinez argues, in essence, that merely suffering from carpal tunnel precludes her from being able to perform sedentary work because such work, according to SSR 96-9p, requires "good use of both hands and the fingers." (Pl.'s Br. at 10.)  Martinez asserts that had the ALJ properly limited her PRFC, the ALJ would have found her disabled.

---

[16] To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *cf. id.* §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104–05. Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (emphasis added).

To support her argument, Martinez relies, *inter alia*, on the following evidence: (1) she suffered from carpal tunnel (Pl.'s Br. at 9; Tr. 18, 798-99); (2) she had a history of numbness, tingling, and pain in both hands, with radiation to the elbow (Pl.'s Br. at 9; Tr. 798); (3) a sensory examination revealed decreased sensation in the tips of the first, second, and third digits of both hands (Pl.'s Br. at 9; Tr. 798); (4) her muscle stretch reflexes were hypoactive bilaterally (Pl's Br. at 9; Tr. 798); (5) electrodiagnostic evidence showing abnormalities of both median nerve conduction studies at the wrist, more significant on the right than on the left (Pl.'s Br. at 9; Tr. 799); and (6) she wore wrist splints (Pl.'s Br. at 9; Tr. 798).

As to Martinez's claim that it was inconsistent for the ALJ to find at Step Two that Martinez had the severe impairment of carpal tunnel and then not include any limitations in the PRFC to account for such syndrome, the Court notes that "having a severe impairment is not a sufficient condition for receiving benefits under the Secretary's regulations," but "means only that claimant has passed the second step of the inquiry mandated by the regulations." *Shipley v. Sec. of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987). In other words, the consideration of whether a claimant's impairments are severe at Step Two is a different inquiry than an ALJ's assessment of the claimant's RFC. *See Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *9 (5th Cir. Aug. 19, 2005) ("A claimant is not entitled to social security disability benefits merely upon a showing that she has a severe disability. Rather, the disability must make it so the claimant cannot work to entitle the claimant to disability benefits."); *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) ("The ALJ's finding that [the claimant] had a 'combination of impairments that is severe' did not foreclose a finding that [the claimant] had a residual functional capacity to perform a range of light work, and is not necessarily inconsistent

with that finding."); *Quigley v. Astrue*, No. 4:09-CV-402-A, 2010 WL 5557500, at *8 (N.D. Tex. Sept. 8, 2010).[17]

At the June 2, 2010 hearing before the ALJ, Martinez's attorney notified the ALJ that Martinez, who was wearing a wrist brace, had been diagnosed with severe carpal tunnel in which surgery had been recommended and was waiting on medical records of a nerve conduction study from November of 2009. (Tr. 76.) At the hearing, Dr. Charles Murphy, M.D. ("Dr. Murphy"), a medical expert, testified as follows:

> [Dr. Murphy:] Most of the medical is not physical but we have obesity in August of '08, Exhibit 2F her weight was 272, 65 inches. She had, had a brief episode of chest pain. There was an x-ray that showed a question of spondylitis L5. Actually back in October of '07 there was an MRI showing mild bulge at L5, S1 bilaterally spondylitis without spondylolisthesis. Exhibit 16F is just a document indicating that her BMI was 50.6 so you have morbid obesity really is the primary impairment. There's an L5 spondylitis which, you know, in [sic] a mild bulge and otherwise there, you know, there are no physical impairments. . . . And, you know, I think you would to [sic] be looking at between sedentary and light RFC.

---

[17]The Court notes that there are several cases that have found that the ALJ erred in failing to include any limitations in the RFC determination for impairments found to be severe at Step Two. However, the facts in those cases are distinguishable from the instant case. In *Norman v. Astrue*, No. SA-10-CA-849-XR, 2011 WL 2884894, at *5 (W.D. Tex. July 18, 2011), the court stated, "The ALJ's inexplicable omission of the [obstructive sleep apnea ("OSA")] from the RFC analysis in step 4 is contradicted by the determination of the OSA being 'severe' in step 2." In *Norman*, the Court focused on the fact that there was no medical evidence to support the conclusion that Norman's symptoms resulting from his severe OSA had completely disappeared with treatment. Instead, the Court noted that all the medical evidence indicated that the claimant's severe OSA limited his ability to sustain gainful employment. However, in this case, there is no medical evidence indicating what limits, if any, Martinez's carpal tunnel placed on her ability to sustain gainful employment.

Furthermore, in *Martinez v. Astrue*, No. 2:10-CV-0102, 2011 WL 4128837, at *7 (N.D. Tex. Sept. 9, 2011), the Court found that "the failure of the ALJ to include, in the RFC assessment, any limitation as a result of the reattachment surgery he found to be a severe impairment and which he further found causes '*significant limitation' in plaintiff's ability to work* . . . , requires that this case be remanded for clarification of this issue.'" *Id.* (emphasis in original). In reaching this determination, the Court noted that the ALJ erred by failing to offer some explanation as to how the claimant could suffer from a severe impairment but such severe impairment would not have had any limitation on plaintiff's ability to handle objects or pose other manipulative limitations that would affect the jobs identified by the VE. *Id.* However, based on the facts in this case, it is clear that the ALJ, after receiving the October 21, 2009 nerve conduction study, decided to include Martinez's carpal tunnel as a severe impairment at Step Two. But, based on the lack of any additional medical evidence in the record relating to her carpal tunnel and how it functionally impaired her ability to work and the fact that there was no information indicating her use of splints was medically necessary, the ALJ ultimately concluded in the RFC determination that no limitations regarding Martinez's carpal tunnel were necessary. Unlike the ALJ in the earlier *Martinez* case, the ALJ in this case, at least implicitly, explained his findings regarding Martinez's carpal tunnel.

[ALJ:] Based on the 50.6 BMI?

[Dr. Murphy:] Right, and some minor issue in the lumbar spine.

[ALJ:] What about is, she's showing up here, she's got a wrist brace on. Is there any—

[Dr. Murphy:] You know, I don't—

[Martinez's Attorney:] You don't have those here, Your Honor, but she did have a nerve conduction study in November of last year. We're still waiting on it. And the doctor said it was severe carpal tunnel and they wanted to do surgery. But I don't, that's just what the doctor had told her.

(Tr. 75-76.)

In addition, the VE testified at the hearing as follows:

[AJL:] Assume, and I don't know if it matters what age, education, and work experience this claimant has, but assume that there's this claimant with the same age, education, and work experience as our claimant. Given the hypothetical I guess it doesn't matter. Unskilled, sedentary work with loose supervision and limited contact with public and co-workers. That'd be sedentary work that's unskilled; loose supervision, you know, not supervised all the time.

. . . .

[VE:] Okay. There wouldn't be any past work that she could do although I saw that she had sedentary work back in '01 as a telephone solicitor but that's working with the public all the time so that—

. . . .

[ALJ:] —we don't want her doing that.

. . . .

[VE:] But some of the sedentary occupations would be basically assembly type positions. One example is an optical goods assembler. It's sedentary, unskilled, SVP: 2. DOT is 713—

[ALJ:] 713—

[VE:] —687-018, 106,000 national economy, 5,700 for Texas. A second example—

16

. . . .

[VE:] . . . . Another example would be a cutter and paster [sic].  That's unskilled, SVP: 2 also.  <u>DOT</u> is 249.587-014, 536,000 national, 3,200 for Texas.

[ALJ:] Okay.  And those are two examples, you could name more?

[VE:] Yes, Judge.

[ALJ:] And if I limited the use of her upper extremities to occasional would there be any jobs?

[VE:] No, Judge.

[ALJ:] Okay.  So we'll have to wait for those, that nerve conduction study then to see what it says.

(Tr. 96-97.)  It appears that the ALJ received the nerve conduction study on or around June 15, 2010, several days after the hearing before the ALJ.  (Tr. 797.)

Based upon this nerve conduction study, the ALJ found at Step Two that Martinez suffered from several severe impairments, including the severe impairment of carpal tunnel.  (Tr. 18.)  As to this study, the ALJ stated:

> Regarding the claimant's alleged carpal tunnel syndrome, she underwent a nerve conduction study on October 21, 2009, which yielded abnormal results.  The study showed evidence of right median nerve neuropathy at the wrist, with severe sensory and at least moderate motor involvement.  There was also evidence of left median nerve neuropathy at the wrist, with mild to moderate sensory and only mild motor involvement.  Upon inspection, there was no evidence of atrophy of the hand intrinsic musculature bilaterally.

(Tr. 22; *see* Tr. 798-99.)  The ALJ further found, as stated above, that Martinez had the RFC to perform sedentary work, subject only to the above-mentioned mental limitations.  (Tr. 20.)  In making his PRFC determination, the ALJ relied, *inter alia*, on the following evidence in the record: (1) a nerve conduction study revealing, *inter alia*, evidence of left nerve neuropathy at the wrist, with mild to moderate sensory and only mild motor involvement (Tr. 22, 798-99); (2)

17

an absence of evidence indicating any atrophy of the hand intrinsic musculature bilaterally (Tr. 22; *see* Tr. 797-814); (3) testimony from Dr. Murphy stating the record supports a sedentary to light PRFC (Tr. 22, 75-79); and (4) an absence of information indicating the wrist splints worn by Martinez were medically necessary (Tr. 22). At Step Five, the ALJ ultimately determined that Martinez was not disabled because, based upon the testimony of the vocational expert ("VE"), Martinez could perform the sedentary, unskilled jobs of an Optical Good Assembler,[18] Dictionary of Occupational Titles ("DOT") code 713.687-018, and Cutter and Paster,[19] DOT code 249.587-014.[20]

In this case, it is clear that the ALJ waited until he received the nerve conduction study to determine that Martinez's carpal tunnel was a severe impairment at Step Two. However, based upon the nerve conduction study and the lack of any evidence in this study or otherwise showing that Martinez's carpal tunnel functionally limited her ability to perform the full range of sedentary work, the ALJ found that Martinez was capable of performing the full range of sedentary work. It was not error for the ALJ to rely on the opinion of Dr. Murphy in making such a determination even though Dr. Murphy had not considered the nerve conduction study in forming his opinions because the ALJ had determined, as shown in his RFC determination, that Martinez's carpel tunnel syndrome did not functionally limit her ability to perform sedentary work. *See Owen v. Astrue*, No. 3:10-CV-1439-BH, 2011 WL 588048, at *13 (N.D. Tex. Feb. 9,

---

[18] Optical Good Assembler is defined in the DOT as doing the following: "Attaches nose pads and temple pieces to optical frames, using handtools: Positions parts in fixture to align screw holes. Inserts and tightens screws, using screwdriver." DOT, § 713.687-018 (Rev. 4th ed. 1991).

[19] Cutter and Paster is defined in the DOT as doing the following: "Tears or cuts out marked articles or advertisements from newspapers and magazines, using knife and scissors. Records names of publication, page and location, date, and name of customer on label, and affixes label to clipping." DOT, § 249.587-014.

[20] The Court notes that the ALJ incorrectly referred to the DOT code for Cutter and Paster as code 249.287-014. (Tr. 25.) However, the transcript of the hearing before the ALJ shows that the correct code is 249.587-014. (Tr. 97.)

2011); *Quigley v. Astrue*, No. 4:09-CV-402-A, 2010 WL 5557500, at *8 (N.D. Tex. Sept. 8, 2010) ("[T]he ALJ's step two determination that [the claimant] had a severe combination of impairments including illiteracy and innumeracy is not necessarily inconsistent with his RFC determination that [the claimant] had no communicative limitations."); *Ball v. Astrue*, No. 1:06-CV-138-BI, 2008 WL 836418, at *17 (N.D. Tex. Mar. 26, 2008) (finding that the ALJ did not err in finding at Step Two that claimant's wrist fracture was severe and then not incorporating some specific limitations regarding the claimant's wrist fracture into the RFC determination). The ALJ is not required to include limitations in the RFC determination that are not supported by the evidence in the record. *See Muse v. Sullivan*, 925 F.2d at 790. Based on the specific facts in this case, it is clear that the ALJ discussed the evidence in the record in making his PRFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his PRFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Because there is substantial evidence in the record that supports the ALJ's PRFC determination, the Court concludes that remand is not required.[21]

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

---

[21] The Court notes that Martinez also argues that the hypothetical question posed to the VE was flawed because the question did not contain a limitation for Martinez's manipulative abilities due to her carpal tunnel. However, in this case, the ALJ properly incorporated all the functional limitations that he found in his RFC assessment into the hypothetical question. Because, as stated above, the ALJ's RFC determination was supported by substantial evidence and the ALJ's hypothetical question to the vocational expert "tracked" his RFC assessment, the ALJ did not commit error. *See Berry v. Astrue*, No. 3:11-CV-02817-L (BH), 2013 WL 524331, at *23 (N.D. Tex. Jan. 25, 2013), *adopted in* 2013 WL 540587 (N.D. Tex. Feb. 13, 2013) (Lindsay, J.); *Gipson v. Astrue*, No. 3:10-CV-1413-BK, 2011 WL 540299, at *6–7 (N.D. Tex. Feb. 11, 2011) (holding that hypothetical reasonably incorporated disabilities found by ALJ because question closely tracked ALJ's RFC assessment, which took into consideration all impairments).

### NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until August 6, 2013, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 23, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv